UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TODD DANNHAUSER, and
TD CO., L.P.,

     Plaintiffs,

     v.

TSG REPORTING, INC.,

     Defendant.

16-CV-747(CM)

TSG REPORTING, INC.,

     Counterclaim-Plaintiff,

     v.

TODD DANNHAUSER and
TD CO., L.P.,

     Counterclaim-Defendants.


**TSG's Memorandum of Law in Support of its Motion for an Order of Preclusion And Other Relief Pursuant to Fed. R. Civ. P. 37**

Edward L. Powers
Jesenia Ruiz de la Torre
Zukerman Gore Brandeis
  & Crossman, LLP
Eleven Times Square
New York, New York 10036
(212) 223-6700
epowers@zukermangore.com
jruiz@zukermangore.com

*Attorneys for Defendant TSG Reporting, Inc.*

## TABLE OF CONTENTS

Preliminary Statement ...................................................................................... 1

Factual Background .......................................................................................... 1

    I.   The Commission Claims ......................................................................... 8

        1.   No Explanation ................................................................................ 8

        2.   Importance ...................................................................................... 9

        3.   Prejudice to TSG ........................................................................... 9

        4.   Continuance .................................................................................. 10

    II.   The Noncompetition Agreement Claim............................................... 10

Conclusion ...................................................................................................... 13

## TABLE OF AUTHORITIES

**Cases**

*24/7 Records, Inc. v. Sony Music Entm't, Inc.,*
  566 F. Supp. 2d 305 (S.D.N.Y. 2008) .................................................................. 7

*Accelecare Wound Centers, Inc. v. Bank Of N.Y.,*
  No. 08 CIV.8351 (DLC), 2009 WL 2460987 (S.D.N.Y. Aug. 11, 2009) ................... 12

*Am. Standard, Inc. v. Oakfabco, Inc.,*
  498 F. Supp. 2d 711 (S.D.N.Y. 2007); ................................................................. 11

*Arakelian v. Omnicare, Inc.,*
  735 F. Supp. 2d 22S.D.N.Y. 2010) ...................................................................... 13

*Design Strategy, Inc. v. Davis,*
  469 F.3d 284 (2d Cir. 2006)................................................................................. 6

*Dow Jones & Co., Inc. v. Harrods, Ltd.,*
  237 F.Supp.2d 394 (S.D.N.Y.2002) ...................................................................... 12

*Ebewo v. Martinez,*
  309 F. Supp. 2d 600 (S.D.N.Y. 2004) ................................................................... 9

*Fleisher v. Phoenix Life Ins. Co.,*
  858 F. Supp. 2d 290 (S.D.N.Y. 2012)................................................................... 12

*Gravatt v. Gen. Star Indem. Co.,*
  No. 98 CIV. 6670 (RWS), 1998 WL 842351 (S.D.N.Y. Dec. 2, 1998)...................... 11

*Jenkins v. United States,*
  386 F.3d 415 (2d Cir.2004))................................................................................. 12

*Simon v. E. Kentucky Welfare Rights Org.,*
  426 U.S. 26 (1976).............................................................................................. 12

*U.S. Dep't of Treasury v. Official Comm. of Unsecured Creditors of Motors Liquidation Co.,*
  475 B.R. 347 (S.D.N.Y. 2012) ............................................................................. 12

**Rules**

Fed. R. Civ. P. 26 and 37...........................................................................................*passim*

Defendant TSG Reporting, Inc. ("TSG") submits this Memorandum of Law in Support of its Motion for an Order of Preclusion and Other Relief Pursuant to Fed. R. Civ. P. 37 against Plaintiffs TD Co., L.P. ("TDCo") and Todd Dannhauser ("Dannhauser," and collectively, "Plaintiffs").

## PRELIMINARY STATEMENT

Plaintiffs have failed to serve even a single disclosure to support their commission and Noncompetition Agreement claims. In their initial disclosures, Plaintiffs failed to provide damages calculations related to their commission claim. Plaintiffs have since failed or refused to respond to interrogatories asking them to identify the allegedly unpaid commissions at issue and the alleged employment opportunities that Plaintiffs had foregone. And no documents have been produced through discovery to support these claims. Moreover, even after TSG reminded Plaintiffs of their duty to supplement their disclosures, Plaintiffs refused. Given Plaintiffs' utter disregard for their obligations under the Federal Rules, the Court should preclude Plaintiffs from using at trial any information supporting their claims for unpaid or underpaid commissions. The Court should also dismiss Plaintiffs' Noncompetition Agreement claim for declaratory relief because Plaintiffs failed to demonstrate that any non-competitive opportunities have been foregone and because, given the lack of a controversy, this Court lacks subject matter jurisdiction.

## FACTUAL BACKGROUND

The Parties. TSG is a New York corporation that provides court reporting, videography, interpretation, translation, and related services to law firms, corporations, and individuals throughout the country and internationally. (Affidavit of Jesenia Ruiz de la Torre, sworn to November 17, 2016 ("Ruiz Aff."), Exh. 1, Amended Complaint ("Am. Comp.")) ¶¶ 3, 7.[1]) Defendant Dannhauser is the sole proprietor of TDCo, a Delaware limited partnership located in Texas. (Exh. 1, Am. Comp. ¶¶ 2, 3.) At all relevant times, pursuant to a 2005 Marketing Agreement between TSG and TDCo, as amended, TSG has compensated TDCo for its sales

---

[1] All of the exhibits cited herein are attached to the Affidavit of Jesenia Ruiz de la Torre.

efforts by paying bi-monthly commissions to TDCo, accompanied by detailed commission reports in a form approved by TDCo. (*See* Exh. 1, Am. Comp. ¶ 8; Exh. 2, Marketing Agreement § 3 (a)(iv); Exh. 4, Example Commission Report.)

<u>The Commissions Claims</u>. In October 2015, TSG terminated the Marketing Agreement following Dannhauser's misconduct at the residence of a TSG client in Texas. (Exh. 1, Am. Comp. ¶ 12; Exh. 5, Dannhauser Tr. at 60:15-63:20, 72:2-21; Exh. 17, Email to Mike Rixon.) Soon thereafter, in December 2015, Plaintiffs undertook an audit of TSG's books and records pursuant to their contractual right to determine whether commissions had been properly paid by TSG. (Exh. 2, Marketing Agreement § 3 (a)(iv); Exh. 1, Am. Comp. at 2 (unnumbered paragraph)). In the pleadings that followed, Plaintiffs asserted a claim, *inter alia*, for breach of contract ("First Cause of Action") seeking damages for TSG's alleged failure to pay all commissions due and owing under the Marketing Agreement since at least 2012. (Exh. 1, Am. Comp. at 2 (unnumbered paragraph), ¶¶ 42, 48, and 49.) Despite their obligation under Fed. R. Civ. P. 26 (a) to provide TSG with a computation of this category of damages as part of their initial disclosures, Plaintiffs did not do so, nor did they ever supplement their Rule 26 (a) initial disclosures. (Exh. 6, Plfs. Initial Disclosures at 6.)

After answering the amended complaint, TSG served interrogatories asking Plaintiffs to identify and detail the unpaid or underpaid commissions at issue in this action. Plaintiffs did not do so. Initially, Plaintiffs excused their failure by claiming that the responsive information was outside their custody and control (notwithstanding their December 2015 audit of TSG). (Exh. 10, Plfs. Interrog. Resp. No. 1.) After receiving full discovery from TSG and in response to TSG's request to supplement, however, Plaintiffs still failed to identify any alleged unpaid or underpaid commissions, stating instead that they "continue to analyze the material produced or otherwise made available ... and reserve the right to supplement [their] Responses in the future."[2] (Ex. 11,

---

[2] During discovery, TSG produced or made available to Plaintiffs all company information relating to commissions, including TSG's database – Plaintiffs' representatives spent two days in TSG's New York headquarters, logged into the system as the CEO, with full access to TSG's

July 22, 2016, Postlethwaite Letter at 3.) Discovery has closed, and Plaintiffs interrogatory responses have failed to identify even a single claim for unpaid or underpaid commissions.[3] (Exh. 7, Supplemental Interrog. Resp. No. 1.)

TSG also served document demands pertaining to the alleged unpaid commissions. Plaintiffs responded that responsive documents would be produced, but none were.  (Exh. 8, Plfs. Resp. to Request for Production No. 1; Ruiz Aff. ¶ 11.)

In early August 2016, TSG again asked Plaintiffs to supplement their discovery responses. TSG advised that if Plaintiffs intended to pursue their commission claims, they should "update their discovery responses and disclosures, including the production of all responsive documents…in a timely manner pursuant to Fed. R. Civ. P. 26 (e)."  (Exh. 12, Aug. 5, 2016 Ruiz Letter at 2.) Plaintiffs did not supplement their disclosures.  (Ruiz Aff. ¶ 15.)

Thus, Plaintiffs never provided any damage calculations in accordance with Rule 26(a), never supplemented their initial disclosures, never identified any commissions due and owing to Plaintiffs in their written discovery responses, and never produced in discovery documents pertaining to their commission claims.

In the context of a settlement discussion, Plaintiffs provided an excel spreadsheet setting forth a mere 348 commission items they questioned out of the tens of thousands of commissions items that TSG has paid to Plaintiffs over the years (the "Settlement Spreadsheet"). (Exh. 9, Settlement Spreadsheet.) The Settlement Spreadsheet was identified as an exhibit in Plaintiffs' deposition, which took place on October 19, 2016. (Exh. 5, Dannhauser Tr. 218:21-220:10.)  In

---

network. (Ruiz Aff. ¶ 21.)  At no time prior to the October 24th close of fact discovery did Plaintiffs follow up to request additional discovery or information regarding commissions.

[3] The commissions paid by TSG include profit-sharing or "override" payments to TDCo.  In March 2016, TSG noticed that, due to a math error, it had underpaid TDCo $2,349.95.  TSG included that amount in its next payment to TDCo and explained it to Dannhauser while sending his commission report.  In a July 1, 2016 supplemental interrogatory response, Plaintiffs failed to identify any commission claims at issue, and instead referred to this single override payment that had previously been *found and paid* by TSG.  (Exh. 7, Supplemental Interrog. Resp. No. 1.)

addition to acknowledging that the spreadsheet included a few commissions for which Plaintiffs were, in fact, overpaid, Dannhauser testified that Plaintiffs had no knowledge of any allegedly erroneous commissions other than those in the spreadsheet. (*Id.* at 220; 229-230.) As discussed below, because this spreadsheet was provided by Plaintiffs in settlement discussions, not in discovery, the Court would be within its discretion to disregard it.[4]

Because Plaintiffs failed to specify any commission claims or damages in their initial disclosures, interrogatory requests and document production, TSG respectfully requests that Plaintiffs be precluding from introducing evidence at trial related to their commission claims and damages.

The Noncompetition Agreement Claim.  Dannhauser is subject to a post-employment Noncompetition Agreement, which remains in effect for two years from his termination by TSG in November 2015.  (TSG continues to pay commissions to Plaintiffs during this two year period. (Exh. 2, Marketing Agreement Amendment.))  To TSG's knowledge, Dannhauser has complied with that obligation. The covenant expires in less than a year.

Following his notice of termination, Dannhauser asked TSG about a "potential marketing opportunity." (Exh. 1, Am. Comp. ¶ 39.)  TSG responded that Dannhauser's Noncompetition Agreement does not preclude his employment by entities that do not compete with TSG, and requested additional information to determine whether the possible employment opportunity would be permitted under his agreement.  (*Id.* ¶ 40.)  Dannhauser did not provide such information.

In the amended complaint that followed, Plaintiffs nevertheless alleged that TSG's interpretation of Dannhauser's covenants "has prevented Dannhauser from considering new employment opportunities." (Exh. 1, Am. Comp. ¶ 43.)  Plaintiffs demanded a declaration ("Second Cause of Action") that the Noncompetition Agreement is unreasonable and

---

[4] Assuming for the sake of argument that all unpaid or underpaid commissions listed in the Settlement Spreadsheet were not properly paid (and TSG does not so concede), they would total only approximately $11,500. (Ruiz Aff. ¶ 12.)

unenforceable "to the extent that it purports to preclude [Dannhauser] from contacting TSG clients for services that are wholly unrelated to the court reporting and video services offered by TSG …." (*Id.* ¶ 53.)

During discovery, TSG asked Plaintiffs to identify the employment opportunities Dannhauser has been required to forego as alleged in their pleading, and to produce documents relating those employment efforts. (Exh. 8, Plfs. Resp. to Request for Production Nos. 9, 10; Exh. 10, Plfs. Resp. to Interrog. No. 4.) Plaintiffs refused, on the ground that TSG's requests "seek information outside the scope of permissible discovery." (Exh. 11, July 22, 2016 Postlethwaite Letter at 3.) According to Plaintiffs, the information sought "is neither relevant nor proportional to the resolution of Plaintiffs' declaratory judgment claim that the Noncompetition Agreement is unenforceable as a matter of law." (*Id.* at 4.) As support, Plaintiffs cited New York CPLR section 3001, which grants authority to the New York state trial courts to render declaratory judgments. (*Id.* at 4, n. 6.)

TSG responded by suggesting that Plaintiffs withdraw the declaratory judgment claim, but Plaintiffs refused, asserting that they are pursuing a purely legal claim pertaining to the scope of the Noncompetition Agreement, and again relying upon New York state declaratory judgment law. (Exh. 12, Aug. 5, 2016 Ruiz Letter at 2; Exh. 13, Aug. 9, 2016 Postlethwaite Letter at 4-5.)

At a pretrial conference on November 4, 2016, this Court directed Plaintiffs to provide TSG "with all information relating to his job interviews, offers, and any opportunities that he has forgone." (Exh. 14, Nov. 4, 2016 Minute Entry.) The Court further stated: "If Plaintiff fails to provide Defendant with that information by November 14, 2016, the Court will make an immediate finding that he has not foregone any opportunities." (*Id.*)

On November 14, 2016, Plaintiffs' counsel sent TSG's counsel a one-page letter. (Exh. 15, Nov. 14, 2016 Postlethwaite Letter.) It did not describe any job interviews or offers, but said that, following Dannhauser's termination, he was contacted by five companies listed in the letter, all competitors of TSG, and notified each that he could not pursue employment opportunities "relating to the provision of court reporting, videography, and deposition transcription

services." *Id*. These services *directly compete* with TSG.  (Ruiz Aff. ¶ 18; Exh. 16, Website Listing TSG Services.)  As such, these "opportunities" are not at issue in this action.  Rather, as described above, the Amended Complaint seeks a declaration that the covenant at issue does not preclude Dannhauser from performing services "wholly unrelated" to the services offered by TSG.  (Exh. 1, Am. Comp. ¶ 53.)  Dannhauser identified no such opportunities in discovery, and has not done so now in response to the Court's direction.

TSG respectfully requests that the Court make an immediate finding that Dannhauser has not foregone any employment opportunities to preform services unrelated to the services provided by TSG.

Given Plaintiffs' outright refusal to respond to discovery aimed at the factual allegations that Plaintiffs now concede have no basis, this Court should dismiss the Noncompetition Agreement claim for a declaratory judgment, as permitted by Rule 37(c)(1)(c).  Even without resorting to dismissal on this ground, Plaintiffs have now acknowledged that there is no concrete, immediate controversy with respect to the Noncompetition Agreement.  Consequently, the Court may dismiss Plaintiffs' Noncompetition Agreement claim for lack of subject matter jurisdiction.

### ARGUMENT

"If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c) (1).

Rule 26(a) requires initial disclosures to include a computation of categories of damages claimed. Fed R. Civ. P. 26(a).  Additionally, under Rule 26(a), a party must make " 'available for inspection and copying as under Rule 34 the documents or other evidentiary material ... on which such computation is based.' " *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2d Cir. 2006) (quoting Advisory Committee Notes to 1993 Amendment to the Fed. R. Civ. P. 26).  This " 'imposes a burden of disclosure that includes the functional equivalent of a standing Request for Production under Rule 34.  A party claiming damages or other monetary relief must, in

addition to disclosing the calculation of such damages, make available the supporting documents for inspection and copying as if a request for such material had been made under Rule 34.'" *Id.* at 296.

In addition, Rule 26(e)(1)(A) requires, in relevant part, the supplementation of a party's responses to interrogatories and requests for production:

> in a timely manner if the party learns that in some material respect the disclosure is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

Fed. R. Civ. P. 26(e).

As detailed above, Plaintiffs failed to provide any damages calculations in their initial disclosures and never supplemented those disclosures. During discovery, Plaintiffs failed to respond to interrogatories and document requests asking them to identify the allegedly underpaid and unpaid commissions at issue. Not a single written discovery response identifies a commission at issue. Not a single document produced by Plaintiffs in discovery supports their commission claims. Similarly, Plaintiffs affirmatively refused to respond to discovery requests seeking information regarding Plaintiffs' allegations that Dannhauser has foregone relevant employment opportunities due to the Noncompetition Agreement.

Plaintiffs' disclosures and discovery responses were thus, by definition, materially incomplete. Indeed, they were entirely void of information. Even after being reminded by TSG of their Rule 26 (e) obligations to supplement, Plaintiffs did not do so.

"Preclusion [under Rule 37] is 'automatic' unless the non-disclosure was substantially justified or harmless, or unless the district court in its discretion chooses an alternative sanction as provided in Rule 37(c)(1)." *24/7 Records, Inc. v. Sony Music Entm't, Inc.*, 566 F. Supp. 2d 305, 318 (S.D.N.Y. 2008) (citing *Design Strategy, Inc.*). "A district court has wide discretion to impose sanctions, including severe sanctions, under Federal Rule of Civil Procedure 37 . . . ." *Design Strategy, Inc.*, 469 F.3d at 294. In considering whether to preclude evidence, courts must consider

"(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of [the information]; (3) the prejudice suffered by the opposing party as a result of having to prepare to [address new information]; and (4) the possibility of a continuance." *Design Strategy, Inc.*, 469 F.3d at 296. Although a "bad faith" violation is not required to exclude evidence pursuant to Rule 37, "it can be taken into account as part of the party's explanation for its failure to comply." *Id.* Each of these factors heavily weigh in TSG's favor.[5]

## I.    The Commission Claims

1.    <u>No Explanation</u>. Plaintiffs have not offered any plausible justification for failing to identify the commissions in dispute or the associated damages claimed. Plaintiffs have received detailed reports regarding thousands of commissions.  It was incumbent upon them, as the parties asserting damages for commissions allegedly unpaid or underpaid, to identify the commissions at issue and explain their claims. Rather, Plaintiffs admitted at the close of discovery of having no knowledge of any actual commission claims beyond the *de minimis* items in the Settlement Spreadsheet. (Exh. 5, Dannhauser Tr. 218:21-220:10.) Given the foregoing, it appears that Plaintiffs have pursued these claims in this Court in bad faith, simply to cause disruption to TSG and force it to incur legal fees in retaliation for Dannhauser's termination.  Indeed, even though his relationship with TSG was terminable at will, Plaintiffs have alleged that TSG, "had, for some time, been surreptitiously seeking to disassociate itself from Dannhauser," and that the termination -- following Dannhauser's admitted

---

[5] The disclosures required by the Federal Rules must be made in discovery, and information disclosed in connection with settlement negotiations cannot satisfy a parties' discovery obligations. *Richmond v. Gen. Nutrition Centers Inc.*, No. 08 CIV. 3577 PAE HBP, 2012 WL 762307, at *8 (S.D.N.Y. Mar. 9, 2012) (informing the parties that the Court expected to preclude evidence related to damages that was disclosed in settlement, as opposed to discovery, and allowing the parties to brief whether the failure to disclose the same was justified and harmless). Thus, the Court is within its discretion to preclude Plaintiffs from pursuing the alleged unpaid or underpaid commissions of roughly $11,500 identified in their Settlement Spreadsheet. (Exh. 9, Settlement Spreadsheet.)

altercation with a co-worker -- was "wrongful." Ex. 1, Am. Comp., page 1
(unnumbered), ¶¶ 18-19.)

2. <u>Importance</u>. Based on Plaintiffs' admission that they have no knowledge of any
commission claims beyond the $11,500 worth of claims from the Settlement
Spreadsheet, Plaintiffs' commission claim is of minimal importance. (Exh. 5,
Dannhauser Tr. 218:21-220:10; Ruiz Aff. ¶ 12). The real dispute in this litigation
stems from Plaintiffs' assertion that Dannhauser is entitled to exercise certain stock
options because Dannhauser's termination "was wrongful and not for 'cause'". Exh.
1, Am. Comp. ¶¶ 18-19, 51. In the context of this dispute as a whole, the stock option
claim is Plaintiffs' only potentially material.

3. <u>Prejudice to TSG</u>. Discovery has closed.  Plaintiffs' deposition has been taken.
Witness statements and other pretrial submissions are due January 20, 2017.  Exh. 14,
Nov. 4, 2016 Minute Entry. TSG cannot analyze claims that have not been identified
and cannot prepare defenses against such unspecified damage claims. TSG will be
severely and incurably prejudiced if Plaintiffs are permitted to present at trial
previously unidentified claims and damages. Alternatively, discovery will have to be
re-opened, delaying the ultimate resolution of this lawsuit, and multiplying the legal
fees and disruption to TSG. This alternative is also unwarranted in light of Plaintiffs'
admission in discovery that they have no knowledge of additional commission claims.
(Exh. 5, Dannhauser Tr. 218:21-220:10.)  TSG will be prejudiced either way.  "The
purpose of [Rule 37 relief] is to prevent the practice of 'sandbagging' an opposing
party with new evidence." *Ebewo v. Martinez*, 309 F. Supp. 2d 600, 607 (S.D.N.Y.
2004) (citation omitted). In this case, there has to be some finality so that TSG can
prepare for trial.

4.  Continuance.  No party has requested a continuance.  The parties attended the
    pretrial conference on November 4, 2016, when the Court scheduled the deadline for
    the pretrial non-jury submissions. At no time did Plaintiffs ask for a continuance or to
    re-open discovery to address their discovery failures.  Granting a continuance to allow
    further discovery would disrupt the case schedule. The Court has ordered the parties
    to exchange witness statements by January 20, 2017. (Exh. 14, Nov. 4, 2016 Minute
    Entry.) To comply with this deadline and move the case forward, Plaintiffs should be
    precluded from raising commission claims that were not disclosed in discovery.

In *Design Strategy*, the Second Circuit considered a strikingly similar failure to meet

discovery obligations and held that the trial court did not abuse its discretion by precluding

plaintiff from offering witnesses or any other evidence of its alleged lost profits. *Design Strategy,*

*Inc.*, 469 F.3d at 296-97. The plaintiff in *Design Strategy* attempted to assert a lost profits theory

even though it had not been listed as a category of damages in plaintiff's initial disclosures or "at

any point during discovery." *Id.* at 293. The Court observed that plaintiff had failed to comply

with the initial disclosure and document production requirements of Rule 26(a). *Id.* at 295-96.

The Court also observed that the record "did not reflect any supplemental disclosures as

required by Rule 26(e)." *Id.* at 295. As in *Design Strategy*, Plaintiffs here should be precluded

from relying on information they failed to provide to TSG in their initial disclosures, written

discovery responses, or document production.

## II.    The Noncompetition Agreement Claim

According to Plaintiffs' amended complaint, Dannhauser bypassed non-competitive

opportunities because of the Noncompetition Agreement. (Exh. 1, Am. Comp. ¶ 53.)  Plaintiffs

seek a declaration that the Noncompetition Agreement is:

> unenforceable to the extent that it purports to preclude
> Dannhauser from contacting TSG clients for services that are
> *wholly unrelated* to the court reporting and video services offered by
> TSG, and from pursuing potential marketing opportunities at

> ediscovery and translation services firms that do not provide court
> reporting and video services

(Exh. 1, Am. Comp., Demand for Relief at 16, subparagraph (f) (emphasis added).)  To be clear, and as Plaintiffs know, TSG does not provide ediscovery services.  Had Dannhauser had any such opportunities (which he now concedes he did not), he was and remains free to pursue them. TSG does, however, provide translation and interpreting services.  (Exh. 16, Website Listing TSG Services.)

In discovery, TSG asked Plaintiffs to describe the specific opportunities that Dannhauser did not pursue because of the Noncompetition Agreement.  Plaintiffs categorically refused to provide such information, based on their misplaced reliance on New York procedural law, rather than federal declaratory judgment law.  (Exh. 11, July 22, 2016 Postlethwaite Letter at 4, n. 6; Exh. 13, Aug. 9, 2016 Postlethwaite Letter at 4, n. 12.)  "The Declaratory Judgment Act—not state declaratory judgment law—provides the procedural mechanism for granting declaratory relief in federal diversity cases." *Am. Standard, Inc. v. Oakfabco, Inc.*, 498 F. Supp. 2d 711, 715 (S.D.N.Y. 2007); *Gravatt v. Gen. Star Indem. Co.*, No. 98 CIV. 6670 (RWS), 1998 WL 842351, at *2 (S.D.N.Y. Dec. 2, 1998) (same).

On November 14th, in response to this Court's November 4th direction, Plaintiffs' counsel conceded that the only opportunities Dannhauser did not pursue were directly competitive to TSG. (Exh. 15, Nov. 14, 2016 Postelthwaite Letter; Ruiz Aff. ¶ 18.) In other words, there was no factual basis for Plaintiffs' allegations in the amended complaint that Dannhauser bypassed non-competitive opportunities.  (Exh. 1, Am. Comp. ¶ 53.)  Rather than simply admit this in their discovery responses, or agree to TSG's suggestion that they withdraw the Noncompetition Agreement claim, Plaintiffs stonewalled.

Pursuant to Rule 37(c)(1)(C), this Court may order any appropriate sanction set forth in Rule 37(b)(2)(A)(i)-(vi), including dismissal.  Given the circumstances, the Court should make a finding that Dannhauser has not foregone any non-competitive employment opportunities and dismiss of Noncompetition Agreement declaratory relief claim.

Alternatively, the Court could readily find that it lacks subject matter jurisdiction over Plaintiffs' Noncompetition Agreement demand for declaratory relief. In this case, there is simply no "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 58 (1976). TSG has stated that it does not seek to prevent Dannhauser from working in a non-competitive field. Dannhauser has not attempted to do so. The Noncompetition Agreement has operated without incident, and expires in less than a year. (*See* Exh. 3, Noncompetition Agreement § 2.) At best, Plaintiffs are asking this Court for an advisory opinion.

"Subject matter jurisdiction under the Declaratory Judgment Act is limited to an actual controversy, and is coextensive with the case or controversy standard embodied in Article III of the Constitution." *U.S. Dep't of Treasury v. Official Comm. of Unsecured Creditors of Motors Liquidation Co.*, 475 B.R. 347, 357 (S.D.N.Y. 2012) (McMahon, J.) (citation omitted) (finding a hypothetical dispute was not ripe). "The party seeking a declaratory judgment 'bears the burden of proving that the Court has jurisdiction.'" *Id.* "An actual controversy 'must be a real and substantial controversy admitting of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Id.* The disagreement must "have taken on a fixed and final shape so that a court can see what legal issues it is deciding." *Fleisher v. Phoenix Life Ins. Co.*, 858 F. Supp. 2d 290, 300 (S.D.N.Y. 2012) (McMahon, J.) (*citing Jenkins v. United States*, 386 F.3d 415, 418 (2d Cir.2004)) "Accordingly, a touchstone to guide the probe for sufficient immediacy and reality is whether the declaratory relief sought relates to a dispute where the alleged liability has already accrued or the threatened risk occurred, or rather whether the feared legal consequence remains a mere possibility, or even probability of some contingency that may or may not come to pass." *Dow Jones & Co., Inc. v. Harrods, Ltd.*, 237 F.Supp.2d 394, 406–07 (S.D.N.Y.2002) (citation omitted).

Applying these principles, the Court may dismiss Plaintiffs' Noncompetition Agreement claim for lack of jurisdiction. *See Accelecare Wound Centers, Inc. v. Bank Of N.Y.*, No. 08

CIV.8351 (DLC), 2009 WL 2460987, at *7 (S.D.N.Y. Aug. 11, 2009) (dismissing unripe noncompetition claim where plans had not yet been made to compete and employer had not declared an intent to enforce the noncompetition agreement); *but see Arakelian v. Omnicare, Inc.*, 735 F. Supp. 2d 22, 40–41 (S.D.N.Y. 2010) (finding a controversy existed where plaintiff had taken concrete steps, including interviewing for a position with a competitor, had been offered a job, and intended to accept the position).[6] Here, Plaintiffs have stated nothing more than a hypothetical claim because they may want to pursue non-competitive opportunities in the future. Moreover, TSG has represented its intent to allow Plaintiffs to engage in non-competitive opportunities. Thus, there is no controversy for the Court to adjudicate.

### CONCLUSION

For the foregoing reasons, TSG respectfully requests that, pursuant to Rule 37 of the Federal Rules of Civil Procedure, this Court (i) preclude Plaintiffs from using at trial any information supporting their claims for unpaid or underpaid commissions, (ii) make a finding that Dannhauser has not foregone any employment opportunities to preform services unrelated to the services provided by TSG and dismiss Plaintiffs' Noncompetition Agreement claim for declaratory relief under Rule 37 or, in the alternative, dismiss the Noncompetition Agreement claim for lack of subject matter jurisdiction, (iii) impose reasonable expenses and attorneys' fees on the Plaintiffs unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust (Fed.R.Civ.P. 37(a)(5)); and (iv) grant such other relief as the Court deems just and proper.

---

[6] Even if the Court were to conclude that subject matter jurisdiction does exist, the Court would be well within its discretion to dismiss Plaintiffs' unripe noncompetition claim. *Dep't of Treasury.*, 475 B.R. at 358.

Dated:  November 17, 2016
        New York, New York

                              Zukerman Gore Brandeis
                               & Crossman, LLP


                              By: _____
                                   Edward L. Powers
                                   Jesenia Ruiz de la Torre
                              Eleven Times Square
                              New York, New York 10036
                              (212) 223-6700
                              epowers@zukermangore.com
                              jruiz@zukermangore.com

                              *Attorneys for Defendant TSG Reporting, Inc.*