Exhibit 13

DALLAS | NEW YORK

# BREWER
## ATTORNEYS & COUNSELORS

August 9, 2016

**VIA EMAIL**

Jesenia Ruiz de la Torre, Esq.
Zukerman Gore Brandeis & Crossman, LLP
Eleven Times Square
New York, New York 10036

Re:   *Todd Dannhauser, and TD Co., L.P., v. TSG Reporting, Inc.*, No. 16-CV-
747(CM)

Jesenia:

I write in response to the letter dated July 12, 2016 (the "July Letter") sent by Defendant
TSG Reporting, Inc. ("Defendant" or "TSG"). The response of Plaintiffs Todd Dannhauser and
TD Co., L.P. (together, "Plaintiffs") is set forth below.

## Exhibit A

As discussed during the meet and confer which occurred on July 6, 2016 (the "July 6
Call"), Defendant has waived any privilege and/or immunity potentially applicable to the email
chain contained in Exhibit A ("Exhibit A") to Plaintiffs' Revised Responses to Defendant's First
Set of Interrogatories (the "Revised Interrogatory Responses"). Plaintiffs' position on this issue
has not changed.

As the party seeking the protection of the attorney-client privilege, Defendant bears the
burden of proving: (i) the existence of the privilege; and (ii) that the privilege has not been
waived.[1]  Defendant has not proved that Exhibit A, or any part thereof, is protected by the
attorney-client privilege. Furthermore, the July Letter fails to clarify which portion(s) of Exhibit
A Defendant claims is privileged. Even assuming *arguendo* that Exhibit A was, in part,
privileged, TSG waived the privilege by intentionally disclosing the allegedly privileged
communications to its adversary in the above-referenced litigation — Mr. Dannhauser.[2]

Defendant's assertion that Exhibit A presents a case of "inadvertent disclosure" is not
supported by the facts. In New York, inadvertent disclosure of confidential communication

---

[1] *See Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc.*, 215 F.R.D. 466, 471 (S.D.N.Y. 2003) ("Under
New York law, the burden of establishing any right to protection is on the party asserting it . . .") (citation omitted);
*Shamis v. Ambassador Factors Corp.*, 34 F. Supp. 2d 879, 892 (S.D.N.Y. 1999) (a party invoking the protection of
the attorney-client privilege bears the burden of proof; failure to satisfactorily prove the existence of the privilege is
presumptive evidence that any privilege asserted over the documents is waived.").

[2] In New York, only the client may waive the attorney-client privilege. *See* CPLR 4503(a).

# BREWER

Jesenia Ruiz de la Torre
August 9, 2016
Page 2

occurs when, *e.g.*, a party accidentally produces a privileged communication as part of an otherwise voluminous document production.[3] Here, however, the case is starkly different.

TSG waived the attorney-client privilege because: (i) TSG's agent, Jaclyn Huber, did not intend to retain the confidentiality of the allegedly privileged correspondence when Ms. Huber emailed Mr. Dannhauser on March 31, 2016; and (ii) TSG failed to take reasonable precautions to prevent disclosure.[4] Ms. Huber voluntarily and purposefully contacted Mr. Dannhauser on March 31, 2016, regarding TSG's underpayment of commissions rightfully due to Mr. Dannhauser. In conjunction with Ms. Huber's email (sent to TSG's adversary approximately two months after commencement of the above-referenced litigation), Ms. Huber included a chain of correspondence previously exchanged among Ms. Huber, TSG's Chief Executive Officer Mike Rixon ("Rixon"), and Defendant's counsel.

The issue at hand, therefore, is not one of compliance with the Rules of Professional Conduct, but instead Defendant's waiver of the attorney-client privilege as it relates to the improper and inaccurate calculation of Mr. Dannhauser's commissions.

### Time Period Applicable to Plaintiffs' Commission Claims

Plaintiffs do not agree to Defendant's proposal to limit the time period applicable to Plaintiffs' claims regarding TSG's historical and ongoing erroneous calculation of Mr. Dannhauser's commissions. In the Amended Complaint, Plaintiffs allege that TSG has miscalculated commissions rightfully due to Mr. Dannhauser since at least February 2012.[5] Our position on this matter has not changed.

### Time Period Applicable to Defendant's Counterclaims

Plaintiffs object to expanding the time period applicable to Defendant's counterclaims.[6] The time periods applicable to Plaintiffs' commission claims and Defendant's counterclaims are identified in the Amended Complaint and Amended Answer and Counterclaim, respectively. In

---

[3] *See, e.g., Manufacturers and Traders Trust Co. v. Servotronics, Inc.*, 132 A.D.2d 392 (Fourth Dep't 1987).

[4] *See Orbit One Communications, Inc. v. Numerex Corp.*, 255 F.R.D. 98, 107 (S.D.N.Y. 2008) ("The fundamental questions in assessing whether waiver of the privilege occurred are, whether the client intended to retain the confidentiality of the privileged materials and whether he took reasonable precautions to prevent disclosure." quoting *Manufacturers and Traders Trust Co. v. Servotronics, Inc.*, 132 A.D.2d 392, 399 (Fourth Dep't 1987)).

[5] *See* Amended Complaint, filed April 19, 2016, at paras. 27-35.

[6] *See, e.g.*, Plaintiffs' Revised Responses and Objections to Defendant's First Set of Requests for Production of Documents Nos. 30-31.

# BREWER

Jesenia Ruiz de la Torre
August 9, 2016
Page 3

the Amended Complaint, Plaintiffs plead that TSG has engaged in the erroneous calculation of commission payments rightfully due to Mr. Dannhauser since at least February, 2012.[7]  On the other hand, in its Amended Answer and Counterclaim, Defendant seeks relief in the form of, *inter alia*, the precise sum of the allegedly unsubstantiated charges made on Mr. Dannhauser's corporate American Express card for the year 2015 only.[8]

The sound reasoning supporting Plaintiffs' objections to, *e.g.*, Doc Requests Nos. 30-31, does not "appl[y] with equal force" to Defendant's argument seeking to expand the time frame applicable to Defendant's counterclaims.  The time frames arise from two distinct claims pled by each opposing party as derived from the language of each party's operative pleading.  Defendant failed to adequately plead, in its counterclaims, the time frame which it now seeks to apply.  Plaintiffs seek simply to enforce the parameters which Defendant itself created.

## Plaintiffs' Production

In response to Defendant's Requests for Production and Interrogatories, and subject to, and without waiving, those general and specific objections contained within Plaintiffs' Revised Responses and Objections to Defendant's First Set of Requests for Production of Documents and Revised Interrogatory Responses ("Plaintiff's Revised RFP Responses," together with Plaintiffs' Revised Interrogatory Responses, the "Revised Responses"), Plaintiffs will produce nonprivileged documents, not subject to the work product doctrine or other immunity or exemption, in Plaintiffs' possession.  Plaintiffs produced documents on Friday, July 29, 2016.

## Additional Search Terms

In response to Defendant's Requests for Production and Interrogatories, and subject to, and without waiving, those general and specific objections contained within the Revised Responses, Plaintiffs will produce non-privileged documents, not subject to the work product doctrine or other immunity or exemption, in Plaintiffs' possession.  Plaintiffs produced documents on Friday, July 29, 2016.   The review in which Plaintiffs have engaged to identify and produce those responsive documents included those additional search terms contained in the July Letter, with one exception.

In the July Letter, Defendant requests that Plaintiffs include the search term "Aidun" when searching and collecting documents.  Plaintiffs assume that this search term refers to Christopher Aidun, Esq., the attorney who represented Mr. Dannhauser and/or TD Co., L.P. during negotiations with Defendant concerning the Marketing Agreement and Stock Option Agreement.  Communications exchanged between Mr. Dannhauser and Mr. Aidun concerning

---

[7] *See* Amended Complaint, filed April 19, 2016, at paras. 27-35.

[8] *See* Amended Answer and Counterclaim, filed April 28, 2016, at paras. 1 and 31.

# BREWER

Jesenia Ruiz de la Torre
August 9, 2016
Page 4

the Marketing Agreement and Stock Option Agreement, however, are protected by the attorney-client privilege.

Please provide Defendant's reasoning as to why Defendant requested that Plaintiffs search for documents responsive to this particular search term.

**Document Request No. 11**

Plaintiffs confirm that documents within the possession, custody, or control of any entity that is majority or fully owned or controlled by Mr. Dannhauser and/or TD Co., L.P., if any, have been collected.

**Document Request Nos. 9, 10, 17**

Plaintiffs do not withdraw the claim seeking declaratory judgment that the covenants of nondisclosure, noncompetition, and noninterference contained in the Noncompetition Agreement are unreasonable and unenforceable.

As discussed during the July 6 Call, Plaintiffs object to Document Request Nos. 9, 10, and 17 (the "Requests") on the grounds that the Requests seek information outside the scope of permissible discovery.[9] The Federal Rules permit discovery of nonprivileged matter that is relevant to the parties' claims and defenses *and* proportional to the needs of the case.[10] Here, Defendant seeks information that is neither relevant nor proportional to resolution of Plaintiffs' claim for declaratory relief.

Plaintiffs seek declaratory judgment that the Noncompetition Agreement, to the extent that it purports to preclude Mr. Dannhauser from contacting TSG clients for unrelated services and/or from pursuing marketing opportunities at firms that do not provide the same court reporting and video services provided by TSG, is unreasonable and unenforceable.[11] The relief sought by Plaintiffs — declaratory judgment — is appropriate because this claim exclusively concerns Mr. Dannhauser's *legal* rights under the Noncompetition Agreement.[12] Furthermore, a

---

[9] *See* Plaintiffs' Revised Responses and Objections to Defendant's First Set of Requests for Production of Documents Nos. 9, 10, and 17.

[10] *See* FRCP Rule 26(b) ("[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense **and** proportional to the needs of the case . . .").

[11] *See* Amended Complaint, filed April 19, 2016, at para. 53.

[12] CPLR Section 3001, which governs declaratory judgment actions, provides, in part: "[t]he supreme court may render a declaratory judgment having the effect of a final judgment as to the rights and other legal relations of the parties to a justiciable controversy whether or not further relief is or could be claimed."

# BREWER

Jesenia Ruiz de la Torre
August 9, 2016
Page 5

claim for declaratory judgment is the optimal method by which a contract dispute can be settled absent a breach or violation.[13]

Defendant has not suggested or alleged, through its defenses and/or counterclaims, that Mr. Dannhauser has breached or otherwise violated any of the provisions of the Noncompetition Agreement. Indeed, the entirety of the substance of the pleadings to date addresses the Noncompetition Agreement solely in relation to its enforceability and reasonableness qua contract. Therefore, because documents allegedly responsive to the Requests, if any, would have no bearing on the Court's determination of the purely legal issue presented by Plaintiffs' claim, the Requests seek information that will fail to elicit information relevant to the claims or defenses in the above-referenced litigation.

Defendant argues that because information concerning Mr. Dannhauser's search for employment is related to Plaintiffs' allegations regarding the Noncompetition Agreement, Defendant is entitled to "full responses" to the Requests. Defendant is wrong. In making its argument, Defendant cites to a portion of paragraph 43 of Plaintiffs' Amended Complaint which, when read in full, underscores Plaintiffs' position on this issue.[14] In paragraph 43 of the Amended Complaint, Plaintiffs state, after the portion to which Defendant cites: "Accordingly, Dannhauser brings this action to preclude TSG's improper restraints on his ability to obtain new employment."[15] The entirety of paragraph 43 is consistent with the type of relief sought by Plaintiffs — declaratory relief that the Noncompetition Agreement is unreasonable and unenforceable.

Sincerely,

Preston J. Postlethwaite

---

[13] See Kalisch-Jarcho, Inc. v. City of New York, 72 N.Y.2d 727, 731, 536 N.Y.S.2d 419, 421, 533 N.E.2d 258 (1988); see also New York Pub. Interest Research Grp., Inc. v. Carey, 42 N.Y.2d 527, 530-31, 369 N.E.2d 1155, 1157 (1977) ("In the typical case where the future event is an act contemplated by one of the parties, it is assumed that the parties will act in accordance with the law and thus the court's determination will have the immediate and practical effect of influencing their conduct.").

[14] In the July Letter, Defendant cites to paragraph 43 of the Amended Complaint: "Dannhauser has been harmed by TSG's unreasonable and unenforceable interpretation of his covenants of nondisclosure, noncompetition, and noninterference. In doing so, TSG has prevented Dannhauser from considering new employment opportunities."

[15] See Amended Complaint, filed April 19, 2016, at para. 43.