UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | | |
|---|---|---|
| TODD DANNHAUSER, and<br>TD CO., L.P., | : <br> : <br> : | |
| Plaintiffs, | : <br> : | CIV. NO. 16-CV-00747 (CM) (DF) |
| -against- | : <br> : <br> : | DANNHAUSER'S AFFIDAVIT IN<br>OPPOSITION TO |
| TSG REPORTING, INC., | : <br> : | DEFENDANT'S MOTION TO<br>ENFORCE AND IN SUPPORT OF |
| Defendant. | : <br> : | DANNHAUSER'S CROSS-<br>MOTION TO |
| TSG REPORTING, INC., | : <br> : | ENFORCE THE SETTLEMENT<br>AGREEMENT |
| Counterclaim-Plaintiff, | : <br> : | |
| -against- | : <br> : | |
| TODD DANNHAUSER, and<br>TD CO., L.P., | : <br> : <br> : | |
| Counterclaim-Defendants. | : <br> : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

STATE OF NEW YORK     )
                      ) ss:
COUNTY OF NEW YORK    )

Todd Dannhauser, being duly sworn deposes and says:

1. I am the Plaintiff and Counterclaim-Defendant, along with TD Co., L.P. (together, "Dannhauser") in this action and I was a valuable sales agent for TSG Reporting, Inc. ("TSG"), a court reporting and video services company, for more than ten years.

2. I respectfully submit this affidavit in opposition to TSG's motion to enforce and in support of this cross-motion to enforce the Settlement Agreement.

1

3. TSG provides court reporting and videography services to parties involved in domestic and international litigation. Beginning in January 2005, TSG retained me to sell its court reporting and video services to potential clients pursuant to a marketing agreement (the "Marketing Agreement"). Pursuant to the Marketing Agreement, TSG would provide me with bi-monthly commissions. In addition, I received stock options and voting shares pursuant to two agreements (the "Stock Option Agreements").

4. After ten years of service, TSG terminated me by letter dated October 5, 2015. According to the letter, my termination was due to "Gross Reckless Misconduct" resulting from an incident, which occurred on September 24, 2015. The basis for TSG's for "cause" termination was, in fact, a personal dispute between a family member and I that occurred at a private residence and not at a TSG office or workplace.

5. On January 2, 2016, pursuant to my rights afforded to me in the Stock Option Agreements, I provided written notice to TSG of my decision to exercise any and all stock options that were granted to me and had vested prior to October 5, 2015. However, TSG replied that it disputed my right to exercise those stock options because I was terminated for "cause," and, therefore, my stock options also terminated upon my dismissal.

6. Further, it also became clear to me that TSG was improperly calculating my commissions.

7. Consequently, on February 1, 2016, my counsel brought a suit on my behalf in the United States District Court for the Southern District of New York against Defendant (the "Action"), alleging that TSG breached the Marketing Agreement, and because I was wrongfully terminated, I was not entitled to exercise my stock option.

8. After months of discovery and settlement negotiations, TSG and I finally settled all claims and executed the settlement agreement on December 14, 2017 (the "Settlement Agreement").

9. The Settlement Agreement provides that, *inter alia*, TSG agrees to acknowledge the exercise of my stock options pursuant to the Stock Option Agreements. I elected to exercise such options on a cashless basis, subject to a determination of a fair market valuation of TSG.

10. To determine the fair market valuation of TSG, TSG and I agreed that a third-party, Empire Valuation Consultants ("Empire"), would appraise TSG to determine the price at which it will exercise my stock options and acquire my stock.

11. Pursuant to the Settlement Agreement, TSG agreed that it will provide Empire and myself with a general ledger in native format with respect to the "Cost of operations" and "Selling, general, and administrative expenses" as reported in TSG's financial statements.

12. I requested such general ledger because there was cause for concern that TSG would try to hide expenses—I had already observed many irregularities in TSG's operations while still being a TSG employee. Notably, I identified several expense categories that I suspected included expenses over and above what was necessary for TSG's business purposes. Accordingly, the general ledger would allow me to determine what expenses are considered to be self-dealing or otherwise non arm's length transactions and thus, should be "added back" to TSG's profitability metrics when appraising TSG.

13. Indeed, some of TSG's expenses were used for personal reasons. I presented to my counsel evidence of numerous family vacation trips taken by TSG's CEO, Mike Rixon ("Rixon") who frequently used private jets, the cost of which would far exceed the amount of his source of income. Although TSG stated that the private jets were paid for by Rixon's father, it is

now known that TSG has been making payments to Rixon's father supposedly for "rent" and potentially other unspecified business services. Further, Rixon admitted that he purchased personal travel and vacations through the company's American Express cards. While some expenses may have been made using reward "points", a review of personal vacation and other related payments is absolutely necessary.

14. Without "adding back" these expenses, TSG's fair market value would be extremely decreased. Thus, it is absolutely necessary for me to review these disbursements and share this information with Empire.

15. However, I am unable to review TSG's expenses because, to date, TSG has failed to provide a general ledger. TSG only provided an excel spreadsheet—a manually created document that merely lists aggregate amounts of expenses. As such, there is no way that I can determine or understand what particular expenses compose any total sum listed on the spreadsheet.

16. In addition, pursuant to the Settlement Agreement, TSG was required to provide to me its general ledger and all documents and information provided to Empire (the "Appraisal Materials"). I agreed that TSG may reasonably redact sensitive business secrets from the copies of the materials it provided to me, **except for data relevant to the valuation**. TSG has done the opposite—it applied liberal redactions to information that is neither competitively sensitive nor proprietary, including but not limited to travel, office supplies, restaurants, internet service providers, health insurance providers, shipping, phone service, consulting services, computer services and equipment, among others.

17. With a complete lack of transparency (except for the appropriate redactions applied to TSG's business secrets), I am unable to determine which expenses should be "added back." Empire, on its own, is unable to determine such expenses.

18. On June 12, 2018, I attended a meeting with my counsel, Empire, Rixon and his counsel, to discuss the financial information and disclosures provided in the appraisal process to date. This was also an opportunity to ask questions about the disclosures and to provide insight into TSG and the court reporting industry for valuation purposes.

19. During the meeting, my counsel and I raised the issue that the financial documents we received were egregiously redacted. My counsel and I commented that even items such as office supplies and shipping were withheld, and that we do not believe these to be competitively sensitive or proprietary items that should have been redacted. TSG disagreed and stated that it will not reveal any information it has already redacted.

20. Additionally, I noted that the general ledger is incomplete and consists of nothing more than an excel spreadsheet itemizing expenses from TSG's checking account. Specifically, there is no information as to how any of these expenses are allocated to TSG's cost centers, as reflected in its financial statements for the years of 2014, 2015, and 2016. TSG represented that the excel spreadsheet *is* their general ledger, and it *is* the document used by the accountant to prepare the company's financial statements.

21. My counsel and I also questioned Rixon as to his frequent use of private jets, of which we have numerous photos posted on social media. When asked to explain how he can afford using private jets, Rixon indicated that his father pays for these expenses. In this regard, it is worth noting that TSG makes sublease payments to Rixon's father for office space in Farmingdale, New York, at the same address where Rixon's father and brother run a printing and

office supplies business. Not surprising, but all line items for office supplies, scanning and duplication, indeed services that could be performed by Rixon's family members, are redacted in their entirety, despite the fact that there is nothing sensitive or proprietary about such services. This is a clear example of liberal redactions in a potential effort to mask the identity of the vendors to whom TSG has paid tens of thousands, or millions of dollars. From the information presented by TSG, there is no way to determine whether expenditures for any line item were reasonable, arm's-length, and not self-dealing.

22. Without being able to identify the vendors that TSG is paying money to, I am unable to properly assess whether certain expenses are self-dealing and need to be considered, and/or added back for the purpose of the valuation.

23. Additionally, there is $6.3 million in Consulting Fees paid by TSG identified in its financial statement and expense spreadsheet. Of particular note is a $60,000 recurring monthly fee supposedly for the development of TSG's software platform. This software development has been going on for years, and will – according to Rixon – last for another two (2) to four (4) years. Again, there is a lack of transparency as to the party to whom these consulting fees are paid, and what TSG has received in return. Clearly, the heavy use of redactions for an item that does not contain sensitive business or proprietary information is not proper under the Settlement Agreement and causes concern for what else TSG may be hiding.

24. I further noticed other discrepancies between TSG's excel spreadsheet and TSG's 2016 financial statements regarding its reported expenses. In 2016, TSG reported, on its financial statement, that it spent $206,267 on travel. Attached hereto as Exhibit H. However, the excel spreadsheet for that same year only reflects $160 for travel expenses. The same applies to several other categories. For example, TSG reported it disbursed $111,896 in gifts on its financial

statement—only $1,900 is reflected on the excel spreadsheet it provided to Empire and myself. Lastly, TSG reported it expended $748,284 in postage and delivery in 2016 whereas the excel spreadsheet reflects only a disbursement of $261,291 for that same year. It is apparent that because the excel spreadsheet does not provide detailed transactions (including a breakdown of the American Express transactions), I cannot reasonably and accurately assess TSG's expenditures from TSG's excel spreadsheet.

25. More importantly, during the meeting, the Empire appraiser agreed that TSG's information is, in part, lacking in terms of how these expenses were allocated to cost centers in TSG financial statements.

26. The appraiser further stated that he will look at the unredacted expenses to determine if anything seems improper, however, he expressed that his ability to do so will be limited simply to the information provided, as Empire was not engaged to conduct a forensic audit, and as such will not be conducting a forensic audit of the documents provided by TSG. Thus, it is crucial that I have access to the required information, for which I bargained, in order to provide this information to Empire. To date, it has been impossible for me to do so because TSG applied blanket redactions to virtually all expenses it incurred and failed to provide a general ledger in the customary format maintained by businesses such as TSG.

27. Accordingly, due to the lack of transparency in the Appraisal Materials provided to me, I am unable to accurately provide insight to Empire and in turn, TSG's actions have crippled Empire's ability to fairly and accurately value TSG.

28. When entering the Settlement Agreement, I intended that the general ledger would reveal the specific transactions and expenses incurred by TSG to provide comments and suggestions to Empire in making its determinations. I further intended that TSG would only

apply redactions to its business secrets, not to other non-competitively sensitive or proprietary information, such as office supplies and travel. This was critical for me in entering into the Settlement Agreement. Indeed, TSG was well aware of this fact, and promised to provide the information, thus inducing my execution of the Settlement Agreement, while it knew full well that it either could not meet its disclosure obligations, or would simply choose not to.

29. To date, TSG has not provided to Empire and I the general ledger required by the Settlement Agreement. Further, and against the express terms of the Settlement Agreement, TSG has applied redactions to information that is relevant to the valuation of TSG, and that was critical to my executing the Settlement Agreement.

30. Without the documents I bargained for, Empire is unable to accurately, with full information and feedback, determine a fair market valuation of TSG. This in turn, directly affects the price of my shares that TSG agreed to purchase.

I declare under penalty of perjury that the forgoing statements are true and correct to the best of my knowledge and belief.

_____
Todd Dannhauser

Sworn to before me this
28th day of December, 2018

_____
NOTARY PUBLIC

2232-02
4819-6154-3545, v. 3


MARGARET HERNANDEZ
Notary Public
STATE OF TEXAS
My Comm. Exp. 08-29-21
Notary ID # 13126310-3

8